IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

MARTY LORENZO WRIGHT,

    Petitioner,

v.                                        CRIMINAL ACTION NO. 4:95-cr-39
                                           CRIMINAL ACTION NO. 4:95-cr-44

UNITED STATES OF AMERICA,

    Respondent.

## *AMENDED MEMORANDUM OPINION AND ORDER*

On October 12, 1984, Congress passed the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-47, 98 Stat. 1976 ("CCCA"), which included the Sentencing Reform Act of 1984 ("SRA"). Through this, the legislature created the United States Sentencing Commission, which in turn established the Federal Sentencing Guidelines. *See* United States Sentencing Guidelines, § 1A1.1. As part of this new federal sentencing scheme, section 3553(b)(1) of Title 18 of the United States Code made the guideline ranges mandatory.

On January 12, 2005, the United States Supreme Court held that these mandatory guideline sentences were unconstitutional in *United States v. Booker*, 543 U.S. 220, 244–45 (2005). Since then, federal courts have considered the guideline ranges as advisory and are free to impose sentences that are within the statutory minimums and maximums. However, every single United States Court of Appeals has held that the *Booker* decision is not retroactive for purposes of collateral attacks. *In re Fashina*, 486 F.3d 1300, 1306 (D.C. Cir. 2007) (collecting cases); *Cirilo-Munoz v. United States*, 404 F.3d 527, 533 (1st Cir. 2005); *Guzman v. United States*, 404 F.3d 139, 142 (2d Cir. 2005); *Lloyd v. United States*, 407 F.3d 608, 610 (3d Cir. 2005); *United States v. Morris*, 429 F.3d 65, 72 (4th Cir. 2005); *United States v. Gentry*, 432 F.3d 600, 604 (5th Cir. 2005); *Humphress v. United States*, 398

1

F.3d 855, 860 (6th Cir. 2005); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005); *Never Misses A Shot v. United States*, 413 F.3d 781, 783–84 (8th Cir. 2005); *United States v. Cruz*, 423 F.3d 1119, 1120–21 (9th Cir. 2005); *United States v. Bellamy*, 411 F.3d 1182, 1186–87 (10th Cir. 2005); *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005).

The undercutting of *Booker*'s core remedial measure has created a lost generation, a group caught in a national purgatory, where individual citizens pay penance for the constitutional errors of the sovereign. For twenty years of this nation's history, at the height of what has been called the "crack epidemic," which resulted in unconstitutionally high guideline ranges, *Kimbrough v. United States*, 552 U.S. 85, 108–10 (2007) ("Indeed, the Commission itself has reported that the crack/powder disparity produces disproportionately harsh sanctions."), and which was executed in ways that have been described as racially biased, *United States v. Bannister*, 786 F. Supp. 2d 617, 648 (E.D.N.Y. 2011) ("Overwhelming data, analyses, and judicial findings support the conclusion of a disparate racial impact in the mandatory minimum sentences for crack cocaine. Although the disparity has somewhat narrowed in the past two decades, it remains stark."), the federal system imposed unconstitutionally constructed sentences. After *Booker*, although courts now have the discretion to depart from the Guidelines as they see fit, they could not review the sentences of this twenty-year period, leaving those individuals to serve their sentences based on an unconstitutional framework. The Petitioner in this case, Marty Lorenzo Wright ("Petitioner Wright"), is but one of the many members of this lost generation.

On December 21, 2018, Congress passed the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ("FIRST STEP Act"), which authorizes courts to "impose a reduced sentence for anyone" who (1) was convicted of a statute, for which the penalties were modified by Sections 2 or 3 of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010) ("FSA"); (2) the offense was committed

before August 3, 2010; and (3) did not already receive a reduction under the FSA or the FIRST STEP Act. *See* FIRST STEP Act, § 404, 132 Stat. 5194, 5222. With this newest legislation, Congress has indeed taken the first step to begin correcting the wrongs done to the lost generation of 1984 to 2005.

Before the Court is Petitioner Wright's *pro se* letter motion seeking relief under the writs of *coram nobis* or *audita querela*. ECF No. 709.[1] The Court construed this Motion as seeking relief under the FIRST STEP Act. ECF No. 710. For the reasons stated below, the Motion is **GRANTED IN PART AND DENIED IN PART**. It is **DENIED**, insofar as Petitioner Wright's sentence for case number 4:95-cr-44 is not affected by the FIRST STEP Act. However, his motion is **GRANTED** insofar as case number 4:95-cr-39 is indeed affected, and the Court now imposes a total sentence of 360 months as follows: 240 months on Counts 1, 2, 9, 11, 14, and 36; 120 months on Counts 42 and 50, to be served concurrently; and 60 months each on Counts 43 and 51, to be served consecutively.

## I. FACTUAL AND PROCEDURAL HISTORY

From 1985 to August 31, 1995, Petitioner Wright was involved in a family-run crack cocaine and marijuana distribution conspiracy in Virginia. ECF No. 717 at 6. On August 31, 1995, at the age of twenty-six, Petitioner Wright was indicted on multiple counts as indicated below:

- Count 1: Conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base and a quantity of marijuana (21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846)

- Count 2: Engaging in a continuing criminal enterprise (21 U.S.C. § 848)

- Count 9: Distribution of approximately 1/8 ounce of cocaine base (21 U.S.C. § 841(a)(1), (b)(1)(C))

- Count 11: Possession with intent to distribute of 50 grams or more of cocaine base (21 U.S.C. § 841(a)(1), (b)(1)(A))

---

[1] For purposes of ease, the Court will cite only to the document numbers in case number 4:95-cr-39, unless otherwise indicated, but notes that there are duplicate copies of each of the relevant filings in case number 4:95-cr-44.

- Count 14: Possession with intent to distribute of 50 grams or more of cocaine base (21 U.S.C. § 841(a)(1), (b)(1)(A))

- Count 36: Distribution of cocaine base (21 U.S.C. § 841(a)(1), (b)(1)(C))

- Count 42: Possession of a firearm by a convicted felon (18 U.S.C. § 922(g)(1))

- Count 43: Use and carrying a firearm during and in relation to a drug trafficking crime (18 U.S.C. § 924(c)(1))

- Count 50: Possession of a firearm by a convicted felon (18 U.S.C. § 922(g)(1))

- Count 51: Use and carrying a firearm during and in relation to a drug trafficking crime (18 U.S.C. § 924(c)(1))

ECF No. 4. Less than a month later, on September 27, 1995, Petitioner Wright was separately indicted on four more charges:

- Count 3: Possession of a firearm by a convicted felon (18 U.S.C. § 922(g)(1))

- Count 4: Possession of a firearm by a convicted felon (18 U.S.C. § 922(g)(1))

- Count 8: Use and carrying a firearm during and in relation to a drug trafficking crime (18 U.S.C. § 924(c)(1))

- Count 14: Perjury (18 U.S.C. § 1623)

4:95-cr-44, ECF No. 1. Petitioner Wright decided to go to trial on all fourteen counts, which commenced on February 24, 1997. 4:95-cr-39, ECF No. 720 at 3. On March 5, 1997, the jury found Petitioner Wright guilty on all counts for 4:95-cr-39 and guilty on Counts 3 and 4 for 4:95-cr-44. *Id.*

On June 20, 1997, the Court sentenced Petitioner Wright, as required under the then-mandatory sentencing guidelines, to Life imprisonment on Counts 1, 2, 11, and 14; 240 months on Counts 9 and 36; and 120 months on Counts 42 and 50, all to be served concurrently. ECF No. 404. Furthermore, he was sentenced to 60 months on Count 43 and 240 months on Count 51, both to be served consecutive

4

with all other counts and each other. *Id.* Finally, in 4:95-cr-44, the Court sentenced Petitioner Wright to 120 months on both Count 3 and Count 4, to be served concurrently with all other charges, except Counts 43 and 51. 4:95-cr-44, ECF No. 173. In total, Petitioner Wright was sentenced to Life imprisonment plus a mandatory consecutive term of 300 months for the gun charges in Counts 43 and 51.[2] On July 15, 2009, the Court reduced Petitioner Wright's Life sentence to 360 months pursuant to Petitioner Wright's § 3582 Motion under revised guideline ranges, while maintaining the full 300 consecutive term for Counts 43 and 51. 4:95-cr-39, ECF No. 606. Today, Petitioner Wright's current sentence is for 660 months, or fifty-five years. Petitioner Wright has served twenty-three years of this sentence. ECF No. 720 at 2.

During his time in prison, Petitioner Wright has not only improved himself but those around him. In his twenty-three years of imprisonment, Petitioner Wright has only had five minor infractions, and has had no infractions in nearly sixteen years. ECF No. 717 at 7–8. Petitioner Wright created and leads a faith-based re-entry program for other inmates in his prison. ECF No. 708 at 2. He also serves as a Suicide Watch Companion at the prison. *Id.*

On January 4, 2019, Petitioner Wright filed his Motion with the Court. ECF No. 709. On January 30, 2019, the Court ordered Petitioner Wright be appointed counsel and ordered briefing on the matter. ECF No. 710. On January 31, 2019, the Court received a copy of Petitioner Wright's original presentencing report. ECF No. 711. On March 15, 2019, the Government responded in opposition to his motion. ECF No. 717. On April 26, 2019, Petitioner Wright's counsel filed a reply to the Government's opposition. ECF No. 720.

---

[2] Today the mandatory minimum term of imprisonment for first offenses under 18 U.S.C. § 924(c)(1)(A) is five years consecutive to any other sentence (provided the gun was not brandished or discharged, which would result in seven or ten years, respectively), and a mandatory consecutive term of twenty-five years only if the individual commits the subsequent offense "after a prior conviction under this subsection has become final." 18 U.S.C. § 924(c)(1)(A), (C); FIRST STEP Act, § 403(a), 132 Stat. 5221–22.

## II. LEGAL STANDARD

When a court imposes a sentence of imprisonment, that is considered a final judgment on the matter. 18 U.S.C. § 3582(b). It is well established that "[t]he law closely guards the finality of criminal sentences against judicial 'change of heart.'" *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (citing *United States v. Layman*, 116 F.3d 105, 109 (4th Cir. 1997)). Under statutory law, a "court may not modify a term of imprisonment once it has been imposed" except in limited circumstances, including "to the extent otherwise expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B).

## III. DISCUSSION

Petitioner Wright's sentence in 4:95-cr-39 meets the statutory requirements of § 404 of the FIRST STEP Act, but his sentence in 4:95-cr-44 does not. *See* ECF no. 717 at 16; ECF No. 720 at 12. Section 404 states that individuals who (1) was convicted of a statute, for which the penalties were modified by Sections 2 or 3 of the FSA; (2) the offense was committed before August 3, 2010; and (3) did not already receive a reduction under the FSA or the FIRST STEP Act. Counts 9, 11, 14, and 36 in 4:95-cr-39 are all offenses under 21 U.S.C. § 841 and therefore were modified by Section 2 of the FSA. ECF No. 4; FSA, § 2(a), 124 Stat. 2372, 2372. Petitioner Wright committed these offenses between 1985 to August 31, 1995. ECF No. 717 at 6. Petitioner Wright has received a reduction under § 3582(c)(2) pursuant to reduction in the guideline range under 28 U.S.C. § 994(o). ECF No. 606. He has not previously received any reduction under the FSA or the FIRST STEP Act. On the other hand, Petitioner Wright's sentence in 4:95-cr-44 did not involve any offense modified by either Sections 2 or 3 of the FSA. Therefore, the FIRST STEP Act would only apply to his sentence in 4:95-cr-39.

The parties disagree whether Petitioner Wright should receive a reduction. Petitioner Wright argues that the Court has discretion to reduce his entire sentence under the FIRST STEP Act and that the Court should hold a hearing for which he should be present. ECF No. 720 at 18–22. The

Government argues that although he qualifies, Petitioner Wright is not eligible for a reduced sentence because his sentence was already reduced from Life to 360 months under his prior § 3582 Motion, and 360 months is still within his new guideline range under the FIRST STEP Act. ECF No. 716 at 16. Therefore, the Court must decide (1) whether Petitioner Wright is eligible for a resentencing; (2) whether a hearing is necessary or required; and (3) what, if any, relief should the Court grant.

### A. Resentencing under the FIRST STEP Act

*1. The FIRST STEP Act Grants Courts Discretion to Impose New Sentences on Qualified Individuals*

Both parties agree that 18 U.S.C. § 3582(c)(1)(B) is the proper mechanism to seek relief under the FIRST STEP Act. ECF No. 717 at 10–11; ECF No. 720 at 7 n.5. As relevant to the FIRST STEP Act, § 3582(c)(1)(B) states that the court "may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." When it comes to legislation, § 3582 gives Congress wide discretion to craft the relief a court may impose. Therefore, it is the language of § 404 of the FIRST STEP Act that controls the amount of relief sought.

Two instances of the FIRST STEP Act's language guide this Court's analysis. First, § 404(b) states that "a court that imposed a sentence for a covered offense may" grant relief to the petitioner. "The word 'may,' when used in a statute, usually implies some degree of discretion . . . [but] can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." *United States v. Rodgers*, 461 U.S. 677, 706 (1983) (citing *United States ex rel. Siegel v. Thoman*, 156 U.S. 353, 359–60 (1895)). The FIRST STEP Act's use of "may" provides broad discretion to the federal courts; in fact, the Act explicitly notes, "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section." FIRST STEP Act, § 404(c), 132 Stat. 5194, 5222. Other district courts have reached the same conclusion. *See, e.g., United States v. Rose*, No. 03-cr-1501, 2019 WL 2314479, at *4 (S.D.N.Y. May 24, 2019) (citing *United States*

*v. Allen*, No. 96-cr-149, 2019 WL 1877072, at *2–*3 (D. Conn. Apr. 26, 2019)); *United States v. Glore*, 371 F. Supp. 3d 524, 527 (E.D. Wis. 2019). As such, the Court finds that the FIRST STEP Act grants broad discretion to the district courts in providing relief under this Act.

Second, § 404(b) states that a court may "impose a reduced sentence" if the individual meets the three requirements. To "impose" means "to levy or exact," *Impose, Black's Law Dictionary* (11th ed. 2019), or "to lay on, as something to be borne, endured, or submitted to." *Impose, Oxford English Dictionary* (2019). The word "impose" is used in the sentencing context at the disposition of a defendant's case, when the court announces the sentence. *See* 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary"); § 3582(a) ("The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a)"). When it comes to providing sentencing relief, § 3582, on the other hand, repeatedly uses the phrase "term of imprisonment" and allows a court to "reduce" or "modify" that term. 18 U.S.C. § 3582(c)(1)–(2). Under traditional statutory construction rules that "a word is given a consistent meaning throughout the United States Code" and that acts addressing the same subject matter "should be read together such that the ambiguities in one may be resolved by reference to the other," *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 990 (7th Cir. 2001), the use of the word "impose" as opposed to "modify" or "reduce" in the FIRST STEP Act is significant. Moreover, to the extent the mixing of these verbs and phrases are confusing or vague, the rule of lenity arguably applies. *See United States v. Pierre*, 372 F. Supp. 3d 17, 22 (D.R.I. 2019). Therefore, the Court finds that the FIRST STEP Act allows federal courts to in fact impose new reduced sentences, not simply modify or reduce the current "term of imprisonment" already decided.

In order to properly apply the FSA retroactively, the Court must do so in context of *Booker*. Federal courts must presume that Congress acts in the context of relevant case law. *See Abuelhawa v. United States*, 556 U.S. 816, 821 (citing *Williams v. Taylor*, 529 U.S. 362, 380–81, n.12 (2000)). By the time the FSA was enacted, *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Booker*, *Kimbrough v. United States*, 552 U.S. 85 (2007) and other foundational cases on sentencing had already been decided. Moreover, courts may now impose a new reduced sentence under the FIRST STEP Act. Therefore, if it chooses to exercise its discretion to do so, then the Court must consider *Booker* and its related case law since "the law in effect at the time governs sentencing." *United States v. Schaefer*, 120 F.3d 505, 507 (4th Cir. 1997) (citing *Hughey v. United States*, 495 U.S. 411, 413 n.1 (1990)). Therefore, the Court finds that because Congress decided to apply the FSA retroactively through the FIRST STEP Act, the relevant sentencing precedents of *Booker* and its progeny must be considered in imposing the new reduced sentences. The retroactive nature of the FIRST STEP Act provides long-awaited relief to those sentenced under the unconstitutionally imposed mandatory guideline ranges.

This reading of the FIRST STEP Act comports with the purpose of the legislation, which is "further[ing] the Fair Sentencing Act's objective of mitigating the effects of a sentencing scheme that had a racially disparate impact." *United States v. Allen*, No. 3:96-cr-149, 2019 WL 1877072, at *3 (D. Conn. Apr. 26, 2019) (citing *Dorsey v. United States*, 567 U.S. 260, 268 (2012)). This much is evidenced by the text of § 404 itself, which allows courts to apply the FSA retroactively to cases. *See* FIRST STEP Act, § 404(a), 132 Stat. 5194, 5222. To simply ignore this case law, in the context of the FSA and the purpose of the FIRST STEP Act, would fundamentally undermine the very issues Congress sought to address.

*2. The FIRST STEP Act is Not Limited by § 3582(c)(1)(B)*

The Government cautions that the FIRST STEP ACT "must be read together with other existing statutes, including § 3582(c)." ECF No. 717 at 10 (citing *United States v. Fausto*, 484 U.S. 439, 452–53 (1988)). The Government's core argument is that the FIRST STEP Act is limited to the bare minimum guideline-based resentencing traditionally seen in § 3582 motions. *Id.* at 10–15. In so doing, the Government relies on the limited nature of motions made under § 3582(c)(1)(B) pursuant to Federal Rule of Criminal Procedure 35 and those made under § 3582(c)(2). *Id.* at 12–13.

As noted previously, § 3582(c)(1)(B) allows a court to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." This is markedly different than the parameters explicitly noted in Rule 35 or § 3582(c)(2). Relief under Rule 35 can only be granted "upon the government's motion." As for § 3582(c)(2), that subsection only applies when the guideline range "has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)," and in those cases it is only the range that is adjusted. *Dillion v. United States*, 560 U.S. 817, 827 (2010); *see* U.S.S.G. § 1B1.10(b)(1). As the Court explained above, the FIRST STEP Act does not involve the same limited set of circumstances and in fact emphasizes the broad discretion of the sentencing court. Section 3582(c)(1)(B) leaves the door wide open for Congress to grant whatever relief is necessary, which may or may not extend beyond the traditional scope of § 3582 motions. The Court finds no issue of statutory conflict between the FIRST STEP Act and § 3582.

**B. Hearing under the FIRST STEP Act**

Petitioner Wright argues that the Court should hold a full sentencing hearing on the matter. ECF No. 720 at 14–19. As the Court has noted previously, and as Petitioner Wright himself notes, the FIRST STEP Act provides the Court broad discretion. Nothing in the language of the FIRST STEP Act requires the Court to have a hearing. The Court may hold a hearing if it deems necessary to

adequately address the issues of a particular case, or to properly consider the § 3553(a) factors, but it need not do so for every § 3582 Motion under the FIRST STEP Act.

The Court finds that the parties' briefs and the original presentencing report sufficiently articulate the offense conduct as well as any relevant post-conviction conduct that may be considered in the § 3553(a) factors. Therefore, the Court finds a hearing is unnecessary for this matter.

### C. Disposition of Petitioner Wright under the FIRST STEP Act

The Court now turns to how the FIRST STEP Act affects Petitioner Wright's 4:95-cr-39 case. The Court will first address two issues of his sentence, the relevant drug amounts and the applicable mandatory minimums for the gun charges. Then, the Court will go through the § 3553(a) factors and impose a new sentence on Petitioner Wright.

*1. The Drug Amounts Considered for Counts 1, 2, 9, 11, 14, and 36 (The Drug Charges)*

The parties contest the exact drug quantity that should attributed to Petitioner Wright for sentencing: Petitioner Wright argues that the indictment should control, ECF No. 720 at 10, while the Government argues that the amount found in the presentencing report should control. ECF No. 717 at 5; *see* ECF No. 711 at ¶ 78.

The Court must impose a sentence based on the law at sentencing. *Schaefer*, 120 F.3d 505, 507 (4th Cir. 1997) (citing *Hughey v. United States*, 495 U.S. 411, 413 n.1 (1990)). As noted, because the Court is imposing a new sentence on Petitioner Wright, it should apply today's law. As such, it is clear that (1) "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); and relatedly, (2) any fact that increases a mandatory minimum must be submitted to the jury. *Alleyne v. United States*, 570 U.S. 99, 103 (2013).

11

Petitioner Wright's drug counts (Counts 1, 2, 9, 11, 14, and 36) did not ask the jury to make a specific finding as to the amount of drugs he should have been attributed. Therefore, the drug quantity attributable to the defendant must be based on the statutory amounts alleged in the indictment, not the offense conduct as noted in the presentence report. *See id.*; *Apprendi*, 530 U.S. at 490. Other district courts facing this same question under the FIRST STEP Act have reached the same conclusion. *United States v. Latten*, No. 1:02-cr-11, 2019 WL 2550327, at *2–*3 (W.D. Va. June 20, 2019); *United States v. Booker*, No. 07-cr-843, 2019 WL 2544247, at *2 (N.D. Ill. June 20, 2019); *United States v. Stone*, No. 1:96-cr-403, 2019 WL 2475750, at *2–*3 (N.D. Ohio June 13, 2019); *Rose*, 2019 WL 2314479, at *4–*5; *United States v. Smith*, No. 7:04-cr-72, 2019 WL 2092581, at *3 (W.D. Va. May 13, 2019); *United States v. Powell*, 360 F. Supp. 3d 134, 139 (N.D.N.Y. 2019); *United States v. Davis*, No. 07-cr-245s, 2019 WL 1054554, at *2–*3 (W.D.N.Y. Mar. 6, 2019).

At most, Petitioner Wright is attributed with 150 grams and 1/8 ounce of cocaine base, if the jury found that the amounts in Counts 1, 9, 11, and 14 were each separately attributed to him. The FSA raised the minimum drug amounts from 50 grams to 280 grams for 21 U.S.C. § 841(b)(1)(A) and for § 841(b)(1)(B) from 5 grams to 28 grams. Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2(a), 124 Stat. 2372, 2372 (2010). As such, Petitioner Wright's base offense level for Counts 1, 9, 11, 14, and 36 would be reduced to 26. U.S.S.G. § 2D1.1(c)(7). Adding the enhancements, would result in an offense level of 32, which combined with a criminal history of III, would result in a guideline range of 151 to 188 months. As for Count 2, Petitioner Wright's base offense level would drop to 38, *see* U.S.S.G. § 2D1.5(a)(2), but his enhancement raises the offense level to 40, meaning the guideline range remains at 360 months to Life.

*2. The Mandatory Minimums of Counts 43 and 51 (the § 924(c) Charges)*

Next, Petitioner Wright argues that the new mandatory minimums for 18 U.S.C. § 924(c) under the FIRST STEP Act should apply. ECF No. 720 at 20–21. The FIRST STEP Act requires that an individual may only receive the higher 25-year mandatory minimum only after a previous conviction under the same statute has become final. FIRST STEP Act, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22 (2018). This addresses the "stacking" situation that Petitioner Wright originally faced in the 1990s, where defendants were convicted of multiple counts under § 924(c) and received both the original five-year mandatory minimum for the first count and then an additional twenty-five-year mandatory minimum for the second count. ECF No. 720 at 2.

The FIRST STEP Act states that this revision of § 924 only applies to cases where the Court has not imposed a sentence. FIRST STEP Act, § 403(b), 132 Stat. 5222. Here, the Court is imposing a new sentence on Petitioner Wright. Therefore, it is as if Petitioner Wright has not been sentenced. Because "a sentence is not merely the sum of its parts," and district courts impose "sentence[s] by considering all of the relevant factors as a whole," when a new sentence is imposed, a whole sentence on all counts should be imposed. *United States v. Hadden*, 475 F.3d 652, 669 (4th Cir. 2007). Since Petitioner Wright is eligible for a new sentence for his drug counts, the Court may impose a new sentence on the gun counts as well or else risk "unbundl[ing] the entire sentence package." *Id.* The court therefore finds that the FIRST STEP Act's change to the mandatory minimums of § 924(c) applies to Petitioner Wright's new sentence.

*3. The § 3553(a) Factors*

Petitioner Wright's guideline range is 360 months to Life. ECF No. 717 at 16; ECF No. 720 at 11. Based on the Court's findings of law here, Petitioner Wright faces the following statutory penalties:

- Counts 1, 11 and 14 – A mandatory minimum of 120 months and a maximum of Life imprisonment

- Count 2 – A mandatory minimum of 240 months and a maximum of Life imprisonment

- Counts 9 and 36 – A maximum of 240 months

- Counts 42 and 50 – A maximum of 120 months

- Counts 43 and 51 – A mandatory minimum of sixty months, each to be served consecutive to all other counts and each other

The Court now considers the § 3553(a) factors in order to impose a new sentence under the FIRST STEP Act on Petitioner Wright that is sufficient but not greater than necessary. Because the Court is sentencing him today, the Court may consider any and all relevant post-conviction conduct in deciding whether it may depart downward from the advisory guideline range. *Cf. Pepper v. United States*, 562 U.S. 476, 490 (2011) (holding that a district court may consider "evidence of a defendant's rehabilitation since his prior sentencing" to support a downward variance from the guidelines after that initial sentence has been set aside on appeal); *United States v. Davis*, 679 F.3d 190, 195–96 (4th Cir. 2012) (holding that a "district court can consider other sentencing factors" when reducing a sentence after granting a Rule 35 motion).

First, the offense conduct is laid out in the Government's brief and the presentence report. *See* ECF No. 711; ECF No. 717 at 6–7. From 1985, when he was fifteen years old, until August 1995, Petitioner Wright was involved in a conspiracy with other family members, including his mother and brothers, to distribute marijuana and "crack" cocaine in the area outside Williamsburg, Virginia. ECF No. 711 at ¶¶ 14, 17–18. Petitioner Wright became intricately involved in the upper echelons of the conspiracy and formed a gang to distribute the drugs. *Id.* at ¶¶ 17, 20. As part of this conspiracy, Petitioner Wright also committed several violent acts, including two severe beatdowns, threatening

someone with a loaded firearm, threatening to shoot several people, and participating in at least two shootouts. *Id.* at ¶¶ 32, 47, 65, 67, 71, 73.

Second, Petitioner Wright's conviction in 1995 was not his first time in a courtroom. He had eight prior convictions, including misdemeanor assault and battery (at the age of sixteen), a simple marijuana possession charge, a possession with intent to distribute cocaine charge, two reckless driving charges, and two criminal contempt charges for failure to appear. *Id.* at ¶¶ 89–96. This gave Petitioner a criminal history category of III. *Id.* at ¶ 158.

Third, Petitioner Wright's history and characteristics prior to his conviction are as follows. His parents divorced before he was even born, and he had no contact or support from his father. *Id.* at ¶ 118. He was largely raised by his brothers, since his mother was always working. *Id.* at ¶ 119. Growing up in a low-income household, Petitioner Wright would often visit his oldest brother, who was already incarcerated. *Id.* at ¶ 118. At the time of his conviction, Petitioner Wright had six children but had never married. *Id.* at 124. Nonetheless, he was in contact with at least four of his children. *Id.* at ¶¶ 125, 127, 131. Petitioner Wright had a long history of drug use. He began use marijuana at the age of ten. *Id.* at 134. By the time he was fifteen, he was smoking daily. *Id.* He also used cocaine when he was sixteen and seventeen, but eventually settled on smoking marijuana laced with "crack" cocaine at the age of nineteen. *Id.* at ¶ 135–36. Petitioner Wright withdrew from high school in his final year. *Id.* at ¶ 138. He had to repeat the ninth grade, was often absent, and received low grades. *Id.* He was also suspended for fighting several times. *Id.* He also claimed at the time that he had worked at several various jobs, but the probation officer could not confirm any of these. *See id.* at ¶¶ 140–44.

Fourth, since his incarceration, Petitioner has five infractions in his prison record. ECF No. 720 at 7–8. In 1998, Petitioner Wright used the phone or mail without consent twice. *Id.* In 2001, he was marked as "being insolent to a staff member." *Id.* at 8. In 2003, he was noted as "failing to follow

safety regulations" and then later for "possessing [an] unauthorized item." *Id.* However, for the past sixteen years, Petitioner Wright has not had any infractions or faced any disciplinary action. ECF No. 720 at 13. During this time, Petitioner Wright held multiple jobs and "participated in a variety of vocational and rehabilitative classes and programs." *Id.* Petitioner Wright also has taken on the unique and quite commendable work of creating a Spiritual Mentoring Program at the facility in which he is currently held. *Id.* As the Court noted in its October 5, 2018 Order:

> During his time in prison, Defendant Wright has taken it upon himself to not only improve himself but those around him. In his twenty-[three] years of imprisonment, Defendant Wright has only had [five] minor infractions and has had no infractions in the past [sixteen] years. Defendant Wright serves as a Suicide Watch Companion at the prison. Most impressively, Defendant Wright single-handedly created and has led a faith-based re-entry program for other inmates in his prison that is supported by the Psychology Services. Defendant Wright's "Overcomers Mentor Training" provides education and mentoring skills that aim, among other things, to reduce gang activity, recidivism, and encourage growth. As Defendant Wright himself succinctly describes his transformation, he "has spent the majority of his time in prison being an asset rather than a liability and has greatly contributed to the betterment of others."

ECF No. 708 at 2 (internal citations omitted). The impact of this program is abundantly clear to the Court; the Court has received eight letters from Petitioner Wright's fellow inmates, attesting to his character and the positive impact he has had on their lives. ECF No. 720-2.

The Court understands the severity of Petitioner Wright's conduct. He actively participated in the distribution of marijuana and "crack" cocaine throughout the Tidewater region. He sometimes acted violently to enforce his will. But at the same time, the Court also finds it notable that stability was never a part of his young life. He became involved in the conspiracy because his mother and brothers leading it. He began experimenting with drugs at the age of ten. He became involved in the conspiracy at the age of fifteen. He never had any relationship with his father and spent most of his life surrounded by drugs and his family members moving in and out of prison. Furthermore, the Court

also notes that he has been in prison for twenty-three years. He has been in prison longer than the time span when the sentencing guidelines were mandatory. In that time, he has spent the time to reform himself into a contributing member of this country. Based on all the § 3553(a) factors, the Court imposes a sentence of 360 months of imprisonment on Petitioner Wright as follows:

- Counts 1, 2, 9, 11 14, 36: 240 months on each count, to be served concurrently with Counts 42 and 50 and the sentence in 4:95-cr-44

- Counts 42 and 50: 120 months on each count, to be served concurrently with Counts 1, 2, 9, 11 14, and 36 and the sentence in 4:95-cr-44

- Count 43: 60 months, to be served consecutively with Counts 1, 2, 9, 11 14, 36, 42, 50, and 51 and the sentence in 4:95-cr-44

- Count 51: 60 months, to be served consecutively with Counts 1, 2, 9, 11 14, 36, 42, 43, and 50 and the sentence in 4:95-cr-44

### IV. CONCLUSION

Accordingly, Petitioner Wright's Motion is **GRANTED IN PART AND DENIED IN PART**. It is **DENIED**, insofar as Petitioner Wright's sentence for case number 4:95-cr-44 remains intact. His motion is **GRANTED** insofar as the Court now imposes a sentence of 360 months for case number 4:95-cr-39 as follows: 240 months on Counts 1, 2, 9, 11, 14, and 36; 120 months on Counts 42 and 50, to be served concurrently; and 60 months each on Counts 43 and 51, to be served consecutively.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons and the United States Marshals Service.

**IT IS SO ORDERED**.

Newport News, Virginia
November  /3 , 2019

/s/
Raymond A. Jackson
United States District Judge